## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

ALACARE HOME HEALTH
SERVICES, INC.,

    Plaintiff,

vs.                                          CASE NO. CV-07-J-1285-S

MICHAEL O. LEAVITT, Secretary,
United States Department of Health &
Human Services,

    Defendant.

### MEMORANDUM OPINION

Pending before the court are the plaintiff's motion for summary judgment (doc. 7), brief in support of said motion (doc. 8), the defendant's motion for summary judgment (doc. 9), the defendant's amended memorandum in support of said motion and in opposition to plaintiff's motion (doc. 11), the plaintiff's response in opposition to defendant's motion (doc. 12), the defendant's reply to the plaintiff's response (doc. 13), and the entire administrative record (submitted as attachment to doc. 3)

### FACTUAL BACKGROUND

This case is before the court as an appeal of a final administrative decision of the Secretary of the Department of Health & Human Services ("DHHS) denying reimbursement to the plaintiff for provision of home health services in the years 1998 and 1999. The following facts are not in dispute:

The plaintiff operates a home health care company which provides medical services to home-bound patients in Alabama. Complaint, ¶ 11. In order to receive payment for these services, the plaintiff submits Medicare claims to an intermediary, Palmetto Government Benefits Administrators, LLC (the "intermediary").[1] Complaint, ¶ 12; 42 C.F.R. § 424.32(a)(1)(2000). Regulations contained in the Code of Federal Regulations specify time limits for the submission of claims. See 42 C.F.R. §§ 424.32(a)(4); 424.44. The claims in question in this action were submitted before the deadline, but the intermediary refused to process these claims due to errors contained in them. Complaint, ¶ 13.

The parties dispute whether the relevant regulations require claims to be "error-free" or whether the provider of the services (the plaintiff here) should have been provided an opportunity to correct the errors and omissions in the claims in question. The parties do not dispute that in years prior to 2000, providers were allowed the opportunity to correct claims, nor do they dispute that in the year 2000, the defendant created directives stating that claims should be correct and complete in order to be accepted for processing.

---

[1] 42 C.F.R. § 421.5(b) allows private contractors to act on behalf of the Centers for Medicare & Medicaid Services ("CMS"), an agency of DHHS, for the performance of administrative functions. The contractors, referred to as "intermediaries," process the claims submitted by the providers of Medicare services.

This case has a long history, which the court will not detail here. Relevant to this action are the events post-dating the Court's decision in *Alacare Home Health Services, Inc., v. Thompson*, CV 03-AR-414-S, rendered August 5, 2004. A.R. 598-599, 606-617.[2] Subsequent to that decision, the dispute was returned to the Medicare Provider Reimbursement Review Board ("PRRB"), pursuant to 42 U.S.C. § 1395oo, regarding the issue of whether the claims in question were "timely filed." A.R. 589-590, 605. That hearing was held January 31, 2006. A.R. 468-524. On February 27, 2007, the PRRB issued a decision finding the intermediary wrongly applied an "error-free" standard, and instructed the intermediary to process the claims totaling $335,476.00 without applying an "error-free" standard. A.R. 31-41. Of the five member PRRB, two members dissented from the decision, finding that the provider had been informed no later than May 2000 that the intermediary interpreted "timely-filed" to means claims properly before it in a timely manner, and noting that claims returned to the provider due to errors were not "properly" before it. A.R. 40-41.

On March 16, 2007, the Director of DHHS' Chronic Care Policy Group recommended that the Administrator of CMS review and reverse the PRRB decision. A.R. 22-24. On April 30, 2007, the Administrator, exercising authority granted by 42 U.S.C. § 1395oo(f)(1), issued a decision reversing the PRRB, finding that the

---

[2]"A.R." denotes citations to the administrative record.

claims were not timely filed because they contained errors or were incomplete. A.R. 2 -12. The Administrator specifically found that:

> the regulation, at 42 CFR 424.32(a)(1) expressly states that claims must be filed not just by the time limits in the regulations, but also in accordance with CMS instructions found primarily in section 70 of the Medicare Claims Processing Manual. If those instructions are not followed when a provider files a claim, section 70.2.3. of the Manual states that the claim will not be "considered filed for purposes of determining timely filing." Some of the claims at issue were RTP'd[3] because they contained errors or were incomplete, as defined in section 70.2.3.1 of the Manual, while others were filed so late that there were no days left within the timely filing period for correction. Section 70.3 of the Manual establishes that a claim submission is considered to be filed timely only when it "passes edits for completeness and validity ..." In addition, some claims were rejected as duplicate services. Regardless of the specific reasons for the Intermediary's rejection of the claims, the Administrator finds that all of the Provider's claims at issue in this case did not meet the regulatory and program definition of a timely filed claim. Thus, the Intermediary properly determined the claims at issue incomplete and, thus, untimely filed.

A.R. 10-11.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp.*

---

[3]"RTP" stands for "returned to provider." *See e.g.*, A.R. 502.

*v. Catrett*, 477 U.S. 317, 322 (1986).   As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.* 477 U.S. at 322-23.  The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact.  *Id.* at 323.  The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

Additionally, because this matter is before the court for judicial review of a final decision of the Secretary, the court must apply the standards of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706.  According to the APA, this court must affirm an agency decision unless the court determines that the decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A)(2000); *see also* 42 U.S.C. § 1395oo(f)(1) (providing that

the APA standard applies).  Additionally, the court may reverse the decision if it was unsupported by substantial evidence.  5 U.S.C. § 706(2)(E).

## LEGAL ANALYSIS

The plaintiff challenges this final determination of the Administrator.  This court has jurisdiction pursuant to 42 U.S.C. § 1395oo(f)(1).  The standard of review the court must apply is a narrow one, and the court must give deference to the decision of the Secretary.  *See Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416 (1971); *Alacare Home Health Services, Inc. v. Sullivan*, 891 F.2d 850, 855 (11th Cir.1990).  The court may not substitute its judgment for that of the agency. *Home Health Services of the U.S., Inc. v. Schweiker*, 683 F.2d 353, 356 (11th Cir.1982).

This court is charged with reviewing the decision of the agency.  Solely the decision finding that the claims were not timely filed and therefore were not eligible for payment is before the court.  *See e.g., Girling Health Care v. Shalala*, 85 F.3d 211, 215.  An agency is entitled to deference when it adopts a reasonable interpretation of regulations it has put in force.  *Federal Exp. Corp. v. Holowecki*, 2008 WL 508018, *6 (2008), citing *Auer v. Robbins*, 519 U.S. 452, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997).  In *Auer*, the Supreme Court instructed that "we accept the agency's position unless it is 'plainly erroneous or inconsistent with the regulation.'

6

*Auer*, 519 U.S. at 461, 117 S.Ct. 905 (quoting *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 359, 109 S.Ct. 1835, 104 L.Ed.2d 351 (1989)).

Courts must given an agency's interpretation of its own regulations "controlling weight" unless that interpretation is plainly erroneous or inconsistent with the regulations. *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994). If Congress "has not merely failed to address a precise question, but has given an 'express delegation of authority to the agency to elucidate a specific provision of the statute by regulation,' the agency's 'legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute.'" *Scheerer v. U.S. Atty. Gen.*, 513 F.3d 1244, 1250 (11th Cir.2008). Although policy statements, embodied in compliance manuals and internal directives, are not entitled to full *Chevron* deference, they do reflect "'a body of experience and informed judgment to which courts and litigants may properly resort for guidance.'" *Federal Exp. Corp. v. Holowecki*, 2008 WL 508018, *8 (2008), *citing Bragdon v. Abbott,* 524 U.S. 624, 642, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998) *(quoting Skidmore v. Swift & Co.,* 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944)).

Specific to the facts before this court, 42 U.S.C. § 424.32(a)(1) sets forth the requirement that claims must be filed with the appropriate intermediary in accordance

with HCFA instructions.[4]  Claims must also be filed within the time specified by § 424.44.  *See* 42 C.F.R. § 424.32(a)(4).  The time limits so created allow a provider to submit claims on or before December 31 of the following year for services furnished in the first nine months of a calendar year, and on or before December 31 of the second following year for services that were furnished during the last three months of the calendar year.[5]  42 C.F.R. §424.44.

Nowhere does this regulation spell out whether or not a claim must be accurate in order to be paid.  Plaintiff asserts that the filing of incorrect claims prior to the established deadlines acts as a "placeholder" so that plaintiff may thereafter resubmit those claims in a corrected fashion without them being declared untimely.  The defendant asserts this is an unreasonable interpretation of the requirement that claims be filed in accordance with the relevant instructions.  Rather, the defendant asserts that claims must be accurate in order to be considered "properly filed" for purposes of determining the timeliness of a claim.  Defendant's brief, at 14-15.  The defendant's construction of its own regulations is entitled to substantial deference. *Lyng v. Payne*, 476 U.S. 926, 939, 106 S.Ct. 2333, 2341, 90 L.Ed.2d 921 (1986);

---

[4]The Health Care Financing Administration ("HCFA") was renamed CMS in 2001.

[5]As pointed out by the defendant, this means that a provider never has to submit a claim for payment immediately upon providing a service.  Rather, a provider has no less that fifteen (15) and sometimes as much as twenty-six (26) calendar months to submit a claim for payment.

*Morrison v. Madison Dearborn Capital Partners III L.P.*, 463 F.3d 312, 315 (3rd Cir.2006). Although the plaintiff argues that agency manuals should be considered only as "persuasive," the Supreme Court has stated:

> [w]e must give substantial deference to an agency's interpretation of its own regulations.... Our task is not to decide which among several competing interpretations best serves the regulatory purpose. Rather, the agency's interpretation must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation.... In other words, we must defer to the Secretary's interpretation unless an alternative reading is compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation.... This broad deference is all the more warranted when, as here, the regulation concerns a complex and highly technical regulatory program, in which the identification and classification of relevant criteria necessarily require significant expertise and entail the exercise of judgment grounded in policy concerns.

*Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994) (citations and internal quotation marks omitted).

The regulations state as follows:

§ 424.32 Basic requirements for all claims.

(a) A claim must meet the following requirements:

(1) A claim must be filed with the appropriate intermediary or carrier on a form prescribed by CMS in accordance with CMS instructions.

(2) A claim for physician services, clinical psychologist services, or clinical social worker services must include appropriate diagnostic coding for those services using ICD-9-CM.

(3) A claim must be signed by the beneficiary or on behalf of the beneficiary (in accordance with § 424.36).

(4) A claim must be filed within the time limits specified in § 424.44.

42 C.F.R. § 424.32. The plaintiff asks the court to ignore this language and look only to the time limits specified by 42 C.F.R. § 424.44. This the court cannot do. The plaintiff language of 42 C.F.R. § 424.32(a)(1) states that a claim must be filed in accordance with CMS instructions. The agency interpreted the above regulations to include CMS instructions set forth in the Medicare Claims Processing Manual. A.R. 7-8. After repeating the requirements of § 424.32(a)(1), section 70.2.3 of the Manual states that "services submitted for payment in a manner not complete and consistent according to these instructions will not be accepted into Medicare's electronic claims processing system and will not be considered filed for purposes of determining timely filing." A.R. 412. Section 70.3 states that a submission "is considered to be a filed claim for purposes of determining timely filing on the date that the submission passes edits for completeness and validity ..." A.R. 406. Again in § 3600.2 of the Medicare Intermediary Manual ("MIM") the fact that claims must actually be correct to be considered is discussed. It states:

> These general instructions are supplemented by additional sections in the MIM and in the provider specific manuals which detail the required information for specific types of claims. In order to constitute a Medicare claim, services submitted for payment must be entered in a

10

>claim format in accordance with these instructions.  Services submitted for payment in a manner not complete and consistent according to these instructions will not be accepted into Medicare's electronic claims processing system and will no be considered filed for purposes of determining timely filing.

A.R. 412.

The plaintiff seems to agree that these manual sections were in effect during the relevant time period, albeit under a different section numbers.  Plaintiff's brief, at 15.  The plaintiff then argues that this section applies only to intermediary conduct, and not provider conduct.  *Id.*  The court notes this is an illogical conclusion.  Clearly, an intermediary does not generate bills and lacks the ability to correct a provider's bill.  Rather, the clear reading of the directive in question serves as a notice to intermediaries that they cannot accept a bill as timely filed until it is actually correct.  This is the interpretation set forth by the agency.  A.R.  10-11.

The plaintiff further argues that because it was allowed to correct improper claims after the deadline for their submission in the past, it should have been allowed to continue to do so.  Plaintiff brief at 17.  The plaintiff admits an advisory was sent out in May 2000 stating that submitted bills should be correct or at least corrected before the expiration of the time limit for filing them, but blames defendant for not conducting seminars and educational events.  Plaintiff's brief at 18; A.R. 495-496.

Additionally, plaintiff admits that it received the advisory in question from the intermediary. A.R. 496. That document states:

> If a provider fails to include a particular item or service on its initial bill, an adjustment bill(s) to include such an item(s) or service(s) is not permitted after the expiration of the time limitation for filing a claim....

A.R. 442.

Thus, the evidence establishes that the plaintiff was informed that, to be considered timely, claims had to be complete and correct, no later than May 2000. The claims in question here, for services provided in 1998 and 1999, were not submitted until December 2000. *See e.g.*, complaint, ¶ 12. However, the plaintiff refers to the instruction that claims should be complete and correct as a "[s]udden and unexplained change[] in agency policy..." Plaintiff's brief, at 16. The defendant asserts that this was not a policy shift at all, but instead a decision by Medicare that intermediaries could no longer allow correction of incomplete or incorrect claims past the deadline for submissions. Defendant's brief, at 25. The plaintiff alleges that in prior years, the intermediary "worked with providers after the deadline to rectify technical errors in the claims...." Plaintiff's brief at 17, citing to A.R. 478, 494. The intermediary admits as much. *See e.g.*, A.R. 276. However, this does not provide a basis for the plaintiff's proposition that the intermediary's failure to enforce

Medicare's rules as written in the past prevents Medicare from informing the intermediary it must now do so.

Even assuming the decision that intermediaries had to follow the rules and regulations set forth by the agency was a "policy shift," the Supreme Court has recognized that sometimes, agencies may alter their interpretations of regulations. "An initial agency interpretation is not instantly carved in stone. On the contrary, the agency ... must consider varying interpretations and the wisdom of its policy on a continuing basis" ... in response to changed factual circumstances, or a change in administrations. *National Cable & Telecommunications Ass'n v. Brand X Internet Services,* 545 U.S. 967, 981-982, 125 S.Ct. 2688, 2700 (2005) (citations omitted).

## CONCLUSION

Having considered the foregoing, the court is drawn to the conclusion that the decision of the Secretary of DHHS was reasonable and supported by substantial evidence. The defendant has established that providers have more than sufficient time to submit claims. Intermediaries can RTP claims which are not complete or correct, and allow the provider time to resubmit the claim. The fact that the plaintiff opted to wait until the last possible minute to submit claims for fiscal years 1998 and 1999 because the intermediary allowed such action in prior years does not mean that

the agency is bound to allowing intermediaries to ignore regulations.[6]  Because the court does not find that the decision to enforce regulations is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," the court must affirm the decision of the agency.  *See* 5 U.S.C. § 706(2)(A)(2000).  As such, the court finds that the decision of the Administrator must be upheld.

The court is therefore of the opinion that the defendant's motion for summary judgment is due to be granted, as no genuine issues of material fact remain and the defendant is entitled to judgment in its favor as a matter of law.  The court shall so Order.

**DONE** and **ORDERED** this the 10th day of March, 2008.

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE

---

[6] The plaintiff's argument seems to boil down to that it should be able to file incorrect claims for reimbursement because it has not been required to file correct claims on time in the past.  *See* plaintiff's response in opposition, at 5, 9.  As the court understands this argument, the plaintiff is arguing to preserve its perceived right to file claims with a federal agency without regard to whether they are complete or correct, and then be given time to correct the claims which the intermediary flags as not payable in their present form, regardless of when the final date for filing may have been. Requiring claims for payment of federal monies to be correct and "error-free" is anything but "arbitrary and capricious."